IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA for the
use of YEAROUT MECHANICAL, INC.,
a New Mexico Corporation,

    Plaintiff,

v.                                                                  Civ. No. 10-465 JCH/KBM

AUSTIN COMMERCIAL CONTRACTORS,
L.P., a Delaware limited partnership,
FEDERAL INSURANCE COMPANY, FIDELITY
AND DEPOSIT COMPANY OF MARYLAND, and
TRAVELERS CASUALTY & SURETY
COMPANY OF AMERICA,

    Defendants.

## MAGISTRATE JUDGE'S SECOND REPORT AND RECOMMENDATION[1]

1.    The Court previously entered its Report and Recommendation [Doc. 40], which recommended that this matter be stayed pending arbitration. The Court did not specify the arbitral forum in the Report and Recommendation. In its objections thereto [Doc. 43], Defendant Austin Commercial Contractors, L.P. ("Austin") requested that the Court determine whether the matter should be arbitrated before the Civilian Board of Contract Appeals (CBCA) as requested by Austin or by the American Arbitration Association (AAA), as requested by Plaintiff Yearout Mechanical, Inc. ("Yearout"). The Court issued an Order [Doc. 44] requesting the parties to submit simultaneous briefs addressing the proper forum.

---

[1] Within ten (14) days after a party is served with a copy of the Magistrate Judge's Second Report and Recommendation that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections in the United States District Court to the Second Report and Recommendation. A party must file any objections within the 14-day period allowed if that party wants to have appellate review of the Second Report and Recommendation. If no objections are filed, no appellate review will be allowed.

2. In 2003 Austin and Yearout entered into a Master Subcontract Agreement, YEA0001, which provides in pertinent part:

> Any controversy or claim arising out of or relating to this Agreement or the breach thereof shall be subject to the dispute resolution procedures, if any, set out in the Prime Contract. Should the Prime Contract contain no specific requirement for the resolution of disputes, any such controversy or claim shall be resolved, at Contractor's option, by arbitration pursuant to the Construction Industry Rules of the American Arbitration Association then prevailing, and judgment upon the award rendered by the Arbitrator(s) shall be entered in any Court having jurisdiction thereof.

Doc. 19-2, ¶ 21.

3. The Prime Contract referred to in this provision did not exist in 2003; that document was not entered into until 2005, two years later. *See Subcontract between The Regents of the University of California (Los Alamos National Laboratory) and Austin Commercial Contractors, LP*. [Doc. 19-1].

4. In March, 2006, Austin and Yearout entered into a Work Order 0619YM01 [Doc. 11-2]. The Work Order is a one-page document that contains no arbitration clause. Essentially it lists the amount of the Work Order and provides for retainage and for progress payments. It states that the work shall be performed under the terms and conditions of the Master Subcontract, YEA0001, and attaches that document.

5. Clearly, the parties intended arbitration in the event of payment disputes -- the Master Subcontract Agreement contains an arbitration clause. The issue here is the forum: the CBCA or the AAA. In sum, can the later-executed Prime Contract dictate the forum (the CBCA) when Yearout was unaware of that forum when it entered into the Master Subcontract Agreement?

6. "Arbitration is a contractual remedy for the settlement of disputes by extrajudicial means." *Christmas v. Cimarron Realty Co.*, 648 P.2d 788, 789 (N.M. 1982). "The terms of the arbitration agreement are to be interpreted by the rules of contract law." *Id.* "The terms of the agreement define the scope of the jurisdiction, conditions, limitations and restrictions on the matters to be arbitrated." *Id.* "For a subcontract to incorporate a master agreement by reference, inclusion of the master agreement must be clear and unequivocal and the terms of the master agreement must be known or easily available to the contracting parties." Thomas H. Oehmke., 2 *Commercial Arbitration* § 25:28 (November 2010 database), *available on* Westlaw CMLARB § 25:28.

7. Because there was no Prime Contract at the time of the Master Subcontract Agreement, there could be no "flow down" provision as argued by Austin; a contractual provision that does not exist cannot flow down. The Court finds that the 2006 Work Order does not change this result.

8. Accordingly, the Court finds that the arbitral forum shall be the American Arbitration Association as stated in the Master Subcontract Agreement.

### RECOMMENDED DISPOSITION

I recommend that the arbitral forum shall be the American Arbitration Association as stated in the Master Subcontract Agreement.

_____
Karen B. Molzen
United States Magistrate Judge